UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
KELLY PICHARDO,

                Plaintiff,

   -against-                                  REPORT AND
                                                              RECOMMENDATION

FIFTY FIVE LONG ISLAND CORP. d/b/a        20 CV 2652 (CBA)(RML)
PRIVILEGED, MATTHEW ROBINSON,
ALLISON MONFORT, and CINDY R.
DEVITT,

                Defendants.
----------------------------------------------------------X

LEVY, United States Magistrate Judge:

        By order dated November 10, 2020, the Honorable Carol Bagley Amon, United States District Judge, referred plaintiff's motion for default judgment to me for report and recommendation. For the reasons stated below, I respectfully recommend that plaintiff's motion be granted and that plaintiff be awarded $197,590 in damages, plus pre-judgment and post-judgment interest.

## BACKGROUND AND FACTS

        Plaintiff Kelly Pichardo ("plaintiff") commenced this wage and hour action on June 15, 2020, against defendants Fifty Five Long Island Corp. d/b/a/ Privileged ("Privileged"), Matthew Robinson, Allison Monfort, and Cindy R. Devitt ("defendants"), asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New York Labor Law ("NYLL"), §§ 190, *et seq*. (Complaint, dated June 15, 2020 ("Compl."), Dkt. No. 1.) Defendants Robinson, Monfort, and Devitt are alleged to be owners, officers, principals, and/or managers of Privileged, an adult entertainment venue located at 49-14 Queens Boulevard in

Queens, New York. (Id. ¶¶ 12, 18-20.) Defendants are alleged to have employed plaintiff as an exotic dancer from January 2018 through October 2019. (Id. ¶ 7.) All defendants were properly served with the summons and complaint. (See Affidavit of Service of Kyle Warner, sworn to June 25, 2020, Dkt. No. 5; Affidavits of Service of Arif Altinas, sworn to July 14, 2020, Dkt. Nos. 6-8.) Defendants have failed to answer or otherwise move with respect to the complaint.

Plaintiff moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a) on September 28, 2020. (See Request for Certificate of Default, dated Sept. 28, 2020, Dkt. No. 9.) On October 2, 2020, the Clerk of the Court noted the defaults of all defendants. (See Clerk's Entry of Default, dated Oct. 2, 2020, Dkt. No. 10.) On November 4, 2020, plaintiff moved for default judgment. (See Motion for Default Judgment, dated Nov. 4, 2020, Dkt. No. 11.) Judge Amon referred plaintiff's motion to me on November 10, 2020. (See Order Referring Motion, dated Nov. 10, 2020.)

Plaintiff moves for default judgment on claims under the FLSA and NYLL for (1) defendants' failure to pay her the minimum hourly wage, (2) defendants' unlawful wage deductions in the form of a mandatory "House Fee" paid to defendants each shift, and (3) defendants' failure to provide proper wage notices and wage statements, all of which allegedly occurred from January 2018 through October 2019. (Compl. ¶¶ 33-58; Calculations, annexed as Ex. 1 to the Declaration of Kelly Pichardo, dated Nov. 4, 2020, Dkt. No. 11-2.) Plaintiff seeks to recover unpaid and deducted wages, liquidated damages, statutory damages, and pre-judgment interest. (Plaintiff's Memorandum of Law in Support of Motion for Default Judgment, dated Nov. 4, 2020 ("Pl.'s Mem."), Dkt. No. 11-3, at 4.)

2

## DISCUSSION

### A. Liability

A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). The court must also "determine whether [the plaintiff's] allegations establish [the defendants'] liability as a matter of law." Id.

Plaintiff has sufficiently pleaded factual allegations that give rise to liability for unpaid minimum wages under the FLSA and the NYLL (see Compl. ¶¶ 25-26, 34-39, 41-45), improper wage deductions under the NYLL (id. ¶¶ 31-32, 55-57), and failure to provide proper wage statements and wage notices as required by the NYLL (id. ¶¶ 28, 30, 47-49, 51-53). The extent to which plaintiff can recover damages for these violations initially depends on whether: (1) her claims were timely; (2) she is a covered employee under the FLSA and the NYLL; and (3) defendants were plaintiff's employers under the FLSA and NYLL.

1. Timeliness

For claims to be timely under the FLSA, they must have arisen within the two years prior to filing of the complaint, or—for willful violations—within the three years prior. 29 U.S.C. § 255(a). Here, plaintiff alleges that defendants willfully violated the FLSA by failing to pay her a minimum wage. (Compl. ¶¶ 25-26, 36-38.) Defendants have waived any affirmative defense based on the statute of limitations by virtue of their default. See Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 87 (E.D.N.Y. 2012) (collecting cases). And plaintiff's averment that

3

defendants "were aware" of their failure to pay a minimum wage establishes willfulness. (Compl. ¶ 37); see Moran v. GTL Const., LLC, No. 06 CV 168, 2007 WL 2142343, at *4 (S.D.N.Y. July 24, 2007) ("[F]or the purposes of pleading, willfulness qualifies as a factual state of mind falling under Fed. R. Civ. P. 9(b), which states that the 'condition of mind of a person may be averred generally.'").[1] Because plaintiff alleges she was employed by defendants and that non-payment of wages occurred after January 2018, within three years of the filing of the complaint, her claims under the FLSA are timely.

For plaintiff's claims to be timely under the NYLL, they must have arisen within the six years prior to the filing of the complaint. See N.Y. LAB. LAW §§ 198(3), 663(3). Because plaintiff alleges she was employed by defendants and that defendants' non-payment of wages, wage deductions, and failure to provide proper wage statements and wage notices occurred in 2018 and 2019, her claims under the NYLL are timely.

2. Coverage Under the FLSA and NYLL

Because the minimum wage provisions of the FLSA and NYLL apply only to employees of covered employers, plaintiff must show that (1) she was defendants' employee, and (2) defendants were employers subject to the coverage of each statute. First, under the FLSA, an employee is "any individual employed by an employer," meaning any individual whom an employer "suffer[s] or permit[s] to work." 29 U.S.C. §§ 203(e)(1); (g). Here, plaintiff's allegations that she was hired by defendants in January 2018 and worked at defendants' business approximately five days per week through October 2019 demonstrate that she was defendants'

---

[1] Rule 9(b) now states, in relevant part, "[C]onditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

employee. (Compl. ¶ 7; Declaration of Kelly Pichardo, dated Nov. 4, 2020 ("Pichardo Decl."), Dkt. No. 11-1, ¶¶ 2-3, 9.)

Second, plaintiff's allegations demonstrate that defendants were her employers. To establish that defendants are employers subject to the FLSA and NYLL, plaintiff must show that defendants "possessed the power to control" her activities as a worker considering the totality of pertinent "economic realit[ies]."[2] Herman v. RSR Security Services Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (citation and quotation marks omitted). To evaluate the "economic reality" of an alleged employee-employer relationship, courts look to various factors, none of which is individually dispositive. Id. These factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. In addition, the FLSA requires employees to show their employer was an enterprise engaged in interstate commerce *or* that their work as employees regularly involved them in interstate commerce. See 29 U.S.C. § 206(a).

Here, plaintiff's allegations implicate two of the four factors listed above, thus substantiating an "economic reality" in which defendants "possessed the power to control" her activities. Herman, 172 F.3d at 139. She asserts that all defendants had the power to hire and fire her. (Compl. ¶¶ 7, 18-20; Pichardo Decl. ¶¶ 5-7.) She avers that defendant Privileged controlled her work schedule by requiring her to work approximately seven hours per day, five days per week, and to balance her schedule with shifts on both slow weekdays and busy weekends.

---

[2] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA." Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); see also Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015); Oaxaca v. Hudson Side Cafe Inc., No. 13 CV 2698, 2018 WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018).

5

(Compl. ¶¶ 7-8, 15-16.)  Further, plaintiff generally alleges that each individual defendant had the power to "assign work [and] supervise employees," and specifically alleges that all defendants controlled her activities while she worked by (a) requiring her to perform for customers, (b) directing her to accept payment from customers, (c) denying her uninterrupted meal breaks, (d) regulating her income from tips, and (e) obligating her to pay a nightly "House Fee."  (Compl. ¶¶ 9-10, 15, 17-20, 22, 32; Pichardo Decl. ¶¶ 3, 5-7, 9, 12, 15.)  Although plaintiff's allegations do not portray methods of control as extensive as those in other cases concerning exotic dancers, see, e.g., Hart v. Rick's Cabaret International, Inc., 967 F. Supp. 2d 901, 913-19 (S.D.N.Y. 2013) (club published guidelines for exotic dancers and imposed fines for violations), plaintiff's allegations nonetheless sufficiently establish that defendants were her employers.

    Plaintiff has also satisfied the FLSA's interstate commerce requirement.  To show she was "employed in an enterprise engaged in commerce," 29 U.S.C. § 206(a), plaintiff alleges that Privileged had annual gross sales greater than $500,000 during the period within the three-year statute of limitations and that the business was engaged in interstate commerce.  (Compl. ¶ 13.)  Although this allegation is conclusory insofar as it restates the statutory definition of enterprise coverage while only providing the vague factual allegation that employees "engaged in [interstate] commerce" by "handling, selling, or otherwise working on . . . alcoholic beverages, non-alcoholic beverages, stirrers, straws, dry goods, and food," (id.), multiple courts in this district have held that similar conclusory allegations may establish liability in a motion for default judgment where plaintiffs handled goods or items that originated out-of-state.  See Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (holding that the interstate commerce test "is met if Plaintiffs merely handled supplies or equipment that originated out-of-state . . . .  The Court finds it logical to infer here that the cleaning supplies utilized by the

6

Plaintiffs originated outside of New York."); see also Boutros v. JTC Painting & Decorating Corp., 989 F. Supp. 2d 281, 284 (S.D.N.Y. 2013) (finding defendant subject to enterprise coverage where plaintiffs alleged that they used "tools, paint, and other materials that travel in interstate commerce"). I agree with courts that have adopted this approach, and I find that it is reasonable to infer that the "alcoholic beverages, non-alcoholic beverages, stirrers, straws, dry goods, and food" allegedly handled by defendants' employees "have been moved in or produced for [interstate] commerce." (Compl. ¶ 13); 29 U.S.C. § 203(s)(1)(A)(i). Plaintiff has therefore sufficiently established that she is a covered employee under the FLSA.

3. Joint and Several Liability

Lastly, plaintiff alleges sufficient facts to establish that defendants were a single integrated enterprise for purposes of joint and several liability under both the FLSA and NYLL. "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, [and is therefore] jointly and severally liable under the FLSA for unpaid wages." Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002). "In the context of a default, [joint and several] liability may be established based on limited detail about the relationship of defendants." Nuriddinov v. Masada III, Inc., No. 15 CV 5875, 2017 WL 9253401, at *6 (E.D.N.Y. July 24, 2017) (citation omitted). Here, plaintiff alleges that corporate defendant Privileged and individual defendants Robinson, Monfort, and Devitt all "exercise[d] sufficient control over [business] operations" by hiring, supervising, and firing employees, assigning them work, and collecting a nightly "House Fee," among other activities. (Compl. ¶¶ 15-20.) These allegations sufficiently establish defendants' common ownership, management, and control of labor relations, which is "the central concern . . . underlying the single employer doctrine." Marin v. APU Foods Corp., No. 17 CV 3224, 2018

WL 1462236, at *2 (E.D.N.Y. Feb. 26, 2018) (internal quotation marks and citations omitted). Therefore, I respectfully recommend that defendants be held jointly and severally liable.

### B. Damages

Plaintiff requests damages in the amount of $205,219. This figure comprises unpaid minimum wages, unlawful deductions from gratuities, liquidated damages, and pre-judgment interest. (See Pl.'s Mem. at 4.) Once the court determines that the defaulting defendants are liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'" Gunawan, 897 F. Supp. 2d at 83 (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). "The burden is on the plaintiff to establish [her] entitlement to recovery." Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009).

1. Defendants' Underpayments

Plaintiff alleges that defendants willfully underpaid her in violation of the FLSA and NYLL by (1) not paying her any wage from January 2018 through October 2019, and (2) deducting from her tip income by requiring her to pay a nightly House Fee ranging from $80 to $120. (Compl. ¶¶ 26, 32, 36, 43, 56; Pichardo Decl. ¶¶ 8, 15.) To compensate for these injuries, she requests (1) recovery of those wages, (2) liquidated damages equaling one-hundred percent (100%) of the unpaid wages, and (3) pre-judgment interest. (Pl.'s Mem. at 4.)

a. *Minimum Wage Calculations*

In the absence of any records and in light of defendants' default, plaintiff's recollections suffice to establish damages for unpaid wages. "[W]hen an employer fails to

maintain accurate records or where . . . no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff's recollection and estimates of hours worked are presumed to be correct.'" Gunawan, 897 F. Supp. 2d at 88 (quoting Zeng Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); see also Kim v. Kum Gang, Inc., No. 12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (noting that where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks and citations omitted); Hart, 60 F. Supp. 3d at 466 ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records.").

Here, plaintiff asserts that she typically worked from 10:00 p.m. to 5:00 a.m. (seven hours per day) five days per week, totaling thirty-five (35) hours per week. (Pichardo Decl. ¶ 3.) Plaintiff avers that she worked all fifty-two (52) weeks in 2018 and forty-three (43) weeks in 2019 – every week from January through October. (See Calculations.) The FLSA requires defendants to pay plaintiff a minimum hourly wage of $7.25 at all relevant times. 29 U.S.C. § 206(a)(1). But New York law obligated defendants to pay plaintiff a minimum hourly wage of $13.00 in 2018 and $15.00 in 2019. N.Y. LAB. LAW § 652(a)(i).[3] Because New York's wage is higher, plaintiff may recover that amount. 29 U.S.C. § 218(a); see also Gunawan, 897 F. Supp. 2d at 89. Under the NYLL, her wages should have been $23,660 in 2018 and $22,575 in

---

[3] Because plaintiff alleged that defendants employed at least eleven (11) employees at all times during her employment, defendants qualify as "Large employers" under the NYLL. (Compl. ¶ 24; Pichardo Decl. ¶ 3); N.Y. LAB. LAW § 652(a).

9

2019, totaling $46,235. (See Calculations.) I therefore respectfully recommend that plaintiff be awarded $46,235 in unpaid minimum wages.[4]

### b. *The "House Fee" Deductions*

Next, plaintiff alleges that defendants violated the NYLL by requiring her to pay a nightly "House Fee" of $80 to $120. (Compl. ¶¶ 32, 56; Pichardo Decl. ¶ 15.) Section 193 of the NYLL, titled "Deductions from Wages," states in relevant part: "No employer shall make any charge against wages, or require an employee to make any payment by separate transaction. . . ." N.Y. LAB LAW § 193(3)(a). The text itself is latently ambiguous when applied to these facts—does the "House Fee" alleged in this case fall under Section 193 despite the fact that plaintiff received tips, not wages? Courts have resolved this ambiguity differently. Compare Hart, 967 F. Supp. 2d at 952-54 (awarding damages under the "separate transaction" provision of Section 193(3) where defendants improperly required plaintiff exotic dancers to pay fines, fees, and tip outs from their customer-paid tips); with Xuedan Wang v. Hearst Corp., No. 12 CV 793,

---

[4] Although plaintiff did not state the income she earned from tips while working for defendants, this omission is irrelevant in the context of defendants' default. In order to reduce an employee's minimum wages by the amount of his or her income from gratuities, state and federal law strictly require employers to: (1) inform employees that they intend to credit tips toward employees' minimum wages, and (2) allow employees to retain all of their income from tips. 29 U.S.C. § 203(m); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3 (2011); see also Lanzetta v. Florio's Enters., Inc., 763 F. Supp. 2d 615, 623 (S.D.N.Y. 2011) (citing Padilla v. Malapaz, 643 F. Supp. 2d 302, 309-10 (E.D.N.Y. 2009)); Chung v. Silver Palace Rest., Inc., 246 F. Supp. 2d 220, 228-29 (S.D.N.Y. 2002) ("The two prerequisites that the employer must fulfill to be eligible for the tip credit are strictly construed. . . ."). First, the facts before me do not show that defendants gave plaintiff notice that her minimum wages would be reduced by her tip income. On the contrary, plaintiff alleges that defendants classified her as an independent contractor and never paid nor intended to pay her a minimum wage. (Compl. ¶ 2; Pichardo Decl. ¶ 8.) Second, plaintiff further alleges that defendants did not permit her to retain all of her tip income; instead, defendants allegedly redirected a portion of the gratuities customers intended to pay to plaintiff to bartenders. (Compl. ¶ 61; Pichardo Decl. ¶ 16.) Because at least one (and possibly both) of the prerequisites for a tip credit are not satisfied, plaintiff's tip income should not detract from her damages for unpaid minimum wages.

2013 WL 105784, at *3 (S.D.N.Y. Jan. 9, 2013) (denying plaintiff interns recovery under Section 193(3) where defendant publisher did not pay them a wage because "there can be no 'deduction' within the meaning of [Section 193] when there is nothing from which to take away or subtract").

I find the Hart court's reasoning more persuasive because it draws on the statute's structure, history, and purpose rather than a rigid reading of the statutory text. However, I note that there is a textualist basis for allowing plaintiff to recover despite not receiving a wage. The disjunctive "or" separating "charge against wages" from "any payment by separate transaction" indicates that the statute prohibits two distinct actions: deducting from an employee's funds through their wage and deducting from an employee's funds in any transaction other than from wages. N.Y. LAB LAW § 193(3)(a); see also Hart, 967 F. Supp. 2d at 954 (finding that prohibited "separate transaction[s]" involve deductions from an employee's own funds). This indicates that a plaintiff may recover any improper deduction from his or her funds by an employer, not only those taken directly from a wage.

The court in Hart similarly observed that while the text of Section 193 specifically prohibits deductions from wages in Sections 193(1) and in the first clause of 193(3), it does not mention wages in the second clause of Section 193(3)—"any payment by separate transaction." N.Y. LAB LAW § 193(3)(a); Hart, 967 F. Supp. 2d at 952-53 ("The omission of such limiting language from the third provision is therefore fairly read as a deliberate choice, to which courts should give effect.") (citing Russello v. United States, 464 U.S. 16, 23 (1983) ("Where [the legislature] includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion.")). Further, the Hart court explained that the provision "any

11

payment by separate transaction" was inserted in a 1974 amendment in order to incorporate the Commissioner of Labor's interpretation that the statute did not limit recovery solely to direct wage deductions. Hart, 967 F. Supp. 2d at 953. Lastly, the court reasoned that denying plaintiffs recovery on unlawful deductions from tips merely because defendants did not pay them wages "would effectively reward [defendants] for not having paid the dancers a minimum wage, because had it done so and then deducted the fines, fees, and tip-outs from that minimum wage, it would clearly be liable." Id. at 954. I agree that the text, structure, and purpose of the statute converge to permit recovery of improper deductions from customer-paid tips. Therefore, I find that plaintiff may recover the House Fees defendants improperly charged her.

Plaintiff seeks $47,500 in improperly deducted House Fees. (Pl.'s Mem. at 4; Calculations.) This figure appears to represent the sum of an average House Fee—$100—multiplied by the five days per week plaintiff worked, and then multiplied again by the total number of weeks she worked from January 2018 through October 2019. (See Pichardo Decl. ¶ 3; Calculations; see also supra Section B.1.a.) Because a court may rely upon a plaintiff's recollections in the context of a default judgment (as discussed above), Gunawan, 897 F. Supp. 2d at 88, I respectfully recommend that plaintiff be awarded $47,500 in improperly deducted House Fees.

    2. Liquidated Damages

Plaintiff additionally requests liquidated damages for both her unpaid wages and improperly deducted House Fees. However, it is difficult to discern under which statute liquidated damages are claimed. The complaint asserts that plaintiff is entitled to liquidated damages under both the FLSA and the NYLL. (Compl. ¶¶ 39, 45.) But the law is clear that plaintiff cannot recover cumulative liquidated damages under both statutes for the same time

period. See, e.g., Rana v. Islam, 887 F.3d 118, 119 (2d Cir. 2018) (per curiam). Plaintiff appears to acknowledge as much by arguing that defendants' willful non-payment of wages justifies liquidated damages under the FLSA. (See Pl.'s Mem. at 3.) Yet the amount of liquidated damages that plaintiff requests for unpaid minimum wages—$46,235—equals the unpaid minimum wages under the NYLL, not the FLSA, and contrary to plaintiff's assertion that "[t]he spreadsheet of damages includes 100% liquidated damages under the FLSA," (id.) the calculations use the acronym "NYS LD" in an apparent reference to New York, not federal, law. (See Calculations.)

Nonetheless, I am inclined to continue the general practice of courts in this district and award plaintiff damages under the statute that affords her a greater recovery—in this case the NYLL. See, e.g., Rana, 887 F.3d at 119; Man Wei Shiu v. New Peking Taste Inc., No. 11 CV 1175, 2014 WL 652355, at *13 (E.D.N.Y. Feb. 19, 2014). The NYLL allows plaintiffs to recover such liquidated damages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. LAB. LAW § 663. By nature of their default, defendants have failed to demonstrate such a good faith basis. Moreover, plaintiff has alleged that defendants' non-payment of minimum wages was willful, as they intentionally misclassified her as an independent contractor. (Pichardo Decl. ¶ 8); accord Mahoney v. Amekk Corp., No. 14 CV 4131, 2016 WL 6585810, at *15 (E.D.N.Y. Sept. 30, 2016) (permitting liquidated damages for unpaid minimum wages under NYLL where plaintiff alleged violations were willful and defendants failed to appear), report and recommendation adopted, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016). I accordingly recommend that plaintiff be awarded liquidated damages totaling $93,735: $46,235 for her unpaid wages and $47,500 for her improperly deducted House Fees.

3. <u>Wage Notices</u>

Plaintiff also seeks $5,000 in statutory damages for defendants' failure to provide a wage notice to plaintiff. New York's Wage Theft Prevention Act ("WTPA") requires employers to "provide [their] employees, in writing . . . a notice containing . . . the rate or rates of pay thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other allowances." N.Y. LAB. LAW § 195(1). Employers are required to provide such written wage notices "at the time of hiring." 2014 N.Y. Laws ch. 537 § 1, <u>amending</u> N.Y. LAB. LAW § 195(1-a). Plaintiff asserts that she did not receive a wage notice from defendants when she was hired. (Pichardo Decl. ¶ 14; Compl. ¶ 47.) Statutory damages under the WTPA are $50 per day, up to a maximum of $5,000. N.Y. LAB. LAW § 198(1-b)). Because plaintiff worked more than 100 days, I find that she is entitled to $5,000 for defendants' failure to provide a wage notice upon hiring.

4. <u>Wage Statements</u>

In addition to the wage notice requirement, "[e]mployers are also required to provide employees with a wage statement with each payment of wages." <u>Pastor v. Alice Cleaners, Inc.</u>, No. 16 CV 7264, 2017 WL 5625556, at *5 (S.D.N.Y. Nov. 21, 2017) (citing N.Y. LAB. LAW § 195(3)). Each wage statement must list, among other things, the dates of work covered by the payment of wages, the rate of pay and basis thereof, gross wages, applicable deductions, and allowances claimed as part of the minimum wage. N.Y. LAB. LAW § 195(3). Plaintiff alleges she never received wage statements, which is unsurprising given that she also alleges she did not receive wages. (Pichardo Decl. ¶¶ 13-14; Compl. ¶ 51.) As of February 27, 2015, "an employee can recover $250 for each workday that a wage statement violation occurs or continues to occur, not to exceed $5,000." <u>Pastor</u>, 2017 WL 5625556, at *5 (citing N.Y. LAB

14

Law § 198(1–d)).  Since plaintiff worked more than twenty days, I find that she is entitled to $5,000 for wage statement violations.

     5.  <u>Pre-judgment Interest</u>

Lastly, plaintiff requests pre-judgment interest under the NYLL.  <u>See</u> N.Y. Lab. Law § 663.  Plaintiff may recover both pre-judgment interest and liquidated damages under the NYLL because the measures serve the two distinct purposes of "compensate[ing] a plaintiff for the loss of use of money" and "a penalty," respectively.  <u>Reilly v. Natwest Mkts. Grp. Inc.</u>, 181 F.3d 253, 265 (2d Cir. 1999) (citation omitted); <u>see also</u> <u>Villanueva v. 179 Third Ave. Rest. Inc.</u>, 500 F. Supp. 3d 219, 243 (S.D.N.Y. 2020).  The calculation of pre-judgment interest is based on unpaid wages, not liquidated damages.  <u>Fermin v. Las Delicias Peruanas Rest. Inc.</u>, 93 F. Supp. 3d 19, 49 (E.D.N.Y. 2015) (quoting <u>Mejia v. East Manor USA Inc.</u>, No. 10 CV 4313, 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013), <u>report and recommendation adopted</u>, 2013 WL 2152176 (E.D.N.Y. May 17, 2013)).  Nor is pre-judgment interest calculated on statutory damages for failure to provide wage notices and statements.  <u>See</u> <u>Feuer v. Cornerstone Hotels Corp.</u>, No. 14 CV 5388, 2020 WL 401787, at *12 (E.D.N.Y. Jan. 21, 2020) (citing <u>Gamero v. Koodo Sushi Corp.</u>, 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017), <u>aff'd</u>, 752 F. App'x 33 (2d Cir. 2018)).

The statutory rate of interest is nine percent per annum.  N.Y. C.P.L.R. § 5004.  Where damages were incurred at various times, interest may be calculated from a single reasonable intermediate date.  <u>Id.</u> § 5001(b).  The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating pre-judgment interest.  <u>See</u> <u>Fermin</u>, 93 F. Supp. 3d at 49; <u>Ying Ying Dai v. ABNS NY Inc.</u>, 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020).

Here, damages were incurred from January 2018 through October 2019.  (Compl. ¶

15

7; Pichardo Decl. ¶ 2.)  For the purposes of these calculations, I assume that plaintiff began working for defendants on January 1, 2018, and ceased working on October 31, 2019, a period of 668 days.  I determine that the midpoint of this period, December 1, 2018, is an appropriate intermediate date from which to calculate pre-judgment interest.  See, e.g., Wicaksono v. XYZ 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *9 (S.D.N.Y. May 2, 2011), report and recommendation adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011).  I therefore respectfully recommend that pre-judgment interest be awarded on plaintiff's unpaid wages of $93,735 from December 1, 2018, to the date of this court's judgment at a per diem interest rate of $23.11 ($93,735 x 0.09/365).

      6.  Post-Judgment Interest

Plaintiff is also entitled to post-judgment interest under 28 U.S.C. § 1961(a).  Section 1961 provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment."  Id.  Accordingly, I respectfully recommend that plaintiffs be awarded statutory post-judgment interest.  See Fermin, 93 F. Supp 3d at 53 (finding that post-judgment interest is mandatory).

### CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion be granted and that default judgments be entered against all defendants jointly and severally.  Regarding damages, I respectfully recommend that plaintiff be awarded $197,590, consisting of $46,235 in unpaid wages, $47,500 in improperly deducted gratuities, $5,000 in statutory

16

penalties for wage notice violations, $5,000 in statutory penalties for wage statement violations, and $93,735 in liquidated damages.  I further recommend that plaintiff be awarded pre-judgment interest at the rate of nine percent per annum on her compensatory damages of $93,735 accruing from December 1, 2018, to the date of the entry of judgment at a per diem rate of $23.11, and post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a).

       Plaintiff is directed to serve copies of this Report and Recommendation on defendants by regular mail, and to file proof of service with the court within ten days of this Report and Recommendation.  Any objections to this Report and Recommendation must be filed electronically or with the Clerk of the Court, with courtesy copies to Judge Amon and to my chambers, within fourteen (14) days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

                                                        Respectfully submitted,

                                                    /s/ Robert M. Levy
                                                  ROBERT M. LEVY
                                                  United States Magistrate Judge

Dated: Brooklyn, New York
       August 2, 2021